1

1

EOD AUG 18 2000

2

3        IN THE UNITED STATES BANKRUPTCY COURT
              NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION

4
                                          99 B 36360

5
JOHN HANNO,                    )  00 A 00527
6                              )  August 11, 2000
                               )  Chicago, Illinois
7              Debtors.        )  9:30 A.M.

8

9

10
                    TRANSCRIPT OF PROCEEDINGS
11       BEFORE THE HONORABLE JACK B. SCHMETTERER

12

13

14
APPEARANCES:
15

16
For the Debtor:              Mr. Forrest Ingram;
17

18   For TCF Bank:              Mr. Kenneth Wysocki;

19

20   Court Reporter:            Ms. Jackleen De Fini
                                U. S. Courthouse
21                              219 S. Dearborn St.
                                Chicago, IL 60604.

22

23                          **FILED**

24                        AUG 1 7 2000

25        JACK B. SCHMETTERER, BANKRUPTCY JUDGE
              UNITED STATES BANKRUPTCY COURT

33

2

1        THE CLERK:  John Hanno, 98 B 36360, 00 A

2    00527.

3        MR. WYSOCKI:  Ken Wysocki on behalf of TCF

4    National Bank.

5        MR. INGRAM:  Forrest Ingram on behalf of John

6    Hanno.  Mr. Hanno is also here.

7        THE COURT:  Good morning, Mr. Hanno.

8            Before I take up the motions of the

9    defendant in the adversary, Mr. Hanno, your lawyer

10   wants to withdraw.  What's your position on that?

11       MR. HANNO:  I object to it 10 days before

12   trial.  It's obvious --

13       THE COURT:  Do you have another lawyer to

14   help you?

15       MR. HANNO:  Yes, I do.

16       THE COURT:  You do?

17       MR. HANNO:  Yes.  Well, Mr. Ingram can't for

18   some reason finish.  I have an attorney who is on

19   trial right now.  He can't get involved until next

20   week probably.

21       THE COURT:  He couldn't start to get involved

22   until next week?

23       MR. HANNO:  Yes, Your Honor.

24       THE COURT:  What date did I set this for

25   trial, Mr. Ingram?

3

1          MR. INGRAM:  The 21st of August.

2          THE COURT:  All right.

3                Putting that aside, I have, from the

4     defendant in this case, the defendant and

5     respondent, TCF National Bank, I have several

6     things.  One is a motion to vacate pretrial order

7     which essentially says you filed these other motions

8     which I ought to dispose of first.  And because I

9     don't have jurisdiction, therefore I should put over

10    any hearing.

11                Second, I have a motion to strike the

12    rule 9024 request for relief.  The rule 9024

13    basically, of the bankruptcy rules, basically adopts

14    rule 60, Federal Rule of Civil Procedure, with

15    certain exceptions, which I don't think are relevant

16    here.  And I assume that this motion to strike the

17    rule 9024 request for relief refers to the motion

18    that was filed for preliminary injunction and other

19    relief.

20                And, thirdly, I have from TCF Bank a

21    motion to dismiss adversary complaint under rule 12,

22    Federal Rules of Civil Procedure, which has also

23    been adopted by the bankruptcy rules under, I think,

24    rule 7012.  He refers to rule 12(b)(1) and (b)(6)

25    which, when adopted and incorporated with bankruptcy

4

1   rule 7012, means that he asserts this is improper --

2   -- pardon me, lack of jurisdiction over the subject

3   matter, and failure to state a claim on which relief

4   can be granted.

5           Now, let me tell you how these

6   pleadings strike me.  It's an interesting case.

7   Let's just reverse the history just a little bit.

8   Mr. Hanno's brother came up with, I think, $60,000,

9   and I ruled while this bankruptcy case was pending,

10  that that would be enough to buy him, I don't know

11  whether it was five or six months to sell his home,

12  where he claimed he had equity in the home.  We

13  entered into an agreed order, as I recall, in return

14  for that payment to TCF, or a good portion of it

15  since his attorneys got part of it, he had a certain

16  period within which to sell his home.  And if he

17  didn't sell his home within that period, the case

18  would be dismissed.  So we came up to the end of

19  that period and the bank asked me to dismiss the

20  case and I agreed, so I dismissed the case.  He took

21  an appeal which is now pending before Judge Bucklo.

22  His appeal arises from my dismissal of the case

23  under circumstances then pending.

24          He brings new material before me now.

25  First by way of motion, then by way of an

5

1   adversary.  And essentially he says he just learned

2   -- pardon me, he learned after dismissal, with the

3   aid of his lawyers, that something happened before

4   dismissal which had he known it then, would have

5   blocked the dismissal.  And what was that?  He

6   alleges essentially that the bank which had -- the

7   bank actively blocked his anticipated refinancing

8   from another source, another funding source, before

9   I dismissed the case.

10           Now, let's assume for the sake of

11   argument that no appeal had been taken to the

12   district court from the first order of dismissal.

13   Would I have jurisdiction to entertain this

14   application, and on what basis, if any, could I have

15   jurisdiction.  The gist of his pleadings, although

16   they don't fully say that, are that he learned after

17   dismissal about a potential cause of action

18   consisting of a potential tort under Illinois law of

19   deliberate interference with a commercial

20   expectation, to wit, the expectation he would be

21   able to fund the refinancing of his property.  And

22   that all this happened before dismissal.

23           Now, in the event he had the facts to

24   justify such a claim, that would suggest, and it

25   seems to me does suggest in the context, even though

6

1   not precisely pleaded this way, but in the context

2   of pleadings does suggest that he asserts a

3   predismissal cause of action which would have been

4   property of the estate, and over which this court

5   would have, I suppose, related jurisdiction.  That

6   is, if he's got the horses, the facts, that justify

7   the contention of course.  In the event that any

8   such, any such interference with commercial

9   expectation took place after I dismissed the case,

10  then it would seem to me there would be no such

11  potential jurisdiction.  So seeing the case in that

12  context, I set the matter for hearing to determine

13  what -- to determine whether or not I have potential

14  jurisdiction over this asserted type of claim.

15          Now, it seems to me that the bank is

16  absolutely correct, under the RUCKER FELDMAN

17  Doctrine I have no authority to set aside orders or

18  judgments of the state courts which occurred after

19  the case was dismissed and when there was no stay

20  on.  Which would leave only the claim for other and

21  further relief, which is thrown in, which I take to

22  be a claim that could justify monetary damages.  Of

23  course this assumes, (A), that the debtor or

24  debtor's lawyers have the horses, that is the facts,

25  the evidence, to justify a finding of jurisdiction

7

1  over a cause of action which could have arisen

2  predismissal.

3              And, (B), that there were no defenses.

4  And, (C), that he proves damages and all kinds of

5  things.  There are a lot of ifs there, which I never

6  reach if I don't have jurisdiction.  And if he can't

7  show there was any predismissal wrongdoing which

8  potentially interferes with a commercial expectancy

9  of refinancing, that's really iffy, then of course I

10  wouldn't have jurisdiction to entertain anything.

11  So I assume for the sake of the foregoing

12  discussions, there had been no appeal taken.  Of

13  course the first thing I raised is, do I have

14  jurisdiction in light of the fact that there's an

15  appeal pending before a district judge.

16              Now, as you all know, as our Circuit

17  has pointed out, the question of what is an

18  appealable order in bankruptcy is a very interesting

19  and often a complex subject.  Bankruptcy issues can

20  multiply like rabbits.  And an appeal as to one

21  doesn't always deprive the bankruptcy court of

22  jurisdiction over another.  The issues presented to

23  me are really much different, in fact entirely

24  different, than the issues presented to me on the

25  day I dismissed this case some time ago.  That was a

8

1  simple clear-cut issue, I think:  He hasn't sold the

2  property within the period.  Granted under the

3  agreed order the case got dismissed, period.  End of

4  issue as I saw it.  He took an appeal from that.

5  Does that deprive me of jurisdiction to take up this

6  very different issue, as I have just presented it or

7  summarized it?  I don't think so.  I could be wrong

8  of course.  And because I could be wrong, and

9  because it might be necessary for me to take up this

10 issue only with permission of the district court,

11 both of you lawyers have heretofore said to me that

12 I should send a letter to Judge Bucklo asking her

13 to, in effect, refer at least so much of the matter

14 down to me so that I would have unquestioned

15 authority to proceed.

16        MR. WYSOCKI:  Judge, if I might interrupt for

17 one moment?  That's not TCF's position.

18        THE COURT:  Well, I thought it was.

19             So I have asked the lawyers to suggest

20 a proposed letter to Judge Bucklo.  Have either of

21 you brought one?

22        MR. INGRAM:  No, Your Honor.

23        MR. WYSOCKI:  No.  I was not aware of that

24 request.

25        THE COURT:  So in the event I were to go

9

1  forward with the hearing, I suppose either of you

2  would feel free to argue that this letter which was

3  proposed to me, which was not handed to me, having

4  never been sent, and having no express authority

5  from Judge Bucklo to conduct a hearing, that I was

6  without jurisdiction to conduct a hearing.  Even

7  though, for the reasons I have previously indicated,

8  I believe I am within the jurisdiction of the

9  pendency of the appeal, not deprived of

10  jurisdiction.  It may well be that out of an excess

11  of caution I should let her decide that question.  I

12  will consider doing that by a letter, without the

13  help of counsel as to what the letter should say,

14  even though the issue was raised by counsel.

15          Now, the question is whether I should

16  abort the scheduled trial in light of everything I

17  have said.  And it's complicated by the fact that

18  Mr. Ingram's law office who thought they had the

19  horses, that is the evidence, to support their

20  theory when they started this thing, had an

21  affidavit which, as I recall, pointing out my view

22  of it, had some ambiguity to it, the affidavit from

23  the purported witness as to this asserted wrongdoing

24  that supposedly took place predismissal.

25          I do believe, as I pointed out earlier,

10

1    it was my view that the affidavit was ambiguous as

2    to what date the purported conversation took place

3    between the individuals who were asserted to have

4    had a key conversation.  Although I do understand

5    why Mr. Ingram and his staff read the affidavit as

6    indicating a predismissal event, it doesn't quite

7    say that.  And I pointed that out.  And from what I

8    have been told more recently by Mr. Ingram's

9    associate, a further affidavit has come forth from

10   that individual which I have not seen which I gather

11   the lawyers have seen which, in effect, refines and

12   more specifically presents the position of that

13   witness, and does not demonstrate that anything

14   happened predismissal that will help Mr. Ingram or

15   Mr. Hanno's position, as I tried to summarize it

16   here.

17               So Mr. Ingram makes a motion.  And he's

18   got a bit of a problem coming in like this on the

19   eve of trial, and Mr. Hanno has no other lawyer in

20   hand immediately.  And it seems obvious that a new

21   lawyer could not get ready for the hearing.  And we

22   have none appearing yet that says that he's ready to

23   get ready if I were to extend the hearing.  So Mr.

24   Ingram's problem is under rule 9011.  And he's got

25   only two ways to solve that problem.  I mean, a

11

1    lawyer who reasonably rationally and justifiably

2    files a pleading, but later learns that the evidence

3    is not going to support that pleading, to protect

4    himself and his office has to do one of two things.

5    He either has to withdraw from further processing

6    and pleading, or he has to dismiss the pleading.  He

7    cannot dismiss the pleading, I am told, because Mr.

8    Hanno won't let him, won't give him authority to.

9    So he moves to withdraw, which poses a quandary for

10   me.  His withdrawal would mean we would not have the

11   witnesses here to hold a hearing, to actually have a

12   record made.

13          From what I am told, the witnesses are

14   not going to support Mr. Ingrams's theory as pled.

15   If I were to dismiss this proceeding without that

16   hearing, it seems to me that a subsequent appeal

17   without a record would be a most improper burden for

18   me to shift on higher courts.  And, therefore, it

19   seems to me that the appropriate way to deal with a

20   matter of this sort is to go through with the

21   hearing and decide whether I have jurisdiction now,

22   or any court has jurisdiction to reopen the case

23   based on the theory or the reasoning I advanced

24   earlier.  Remember what that reasoning was?  There

25   is enough here to allege a form of tort occurring

12

1   predismissal which would amount to improper

2   interference with a commercial expectation under

3   Illinois law, which would be a related jurisdiction

4   claim for money, not for reestablishment of title on

5   the property, or to vacate orders, which could not

6   be done under the RUCKER FELDMAN Doctrine.

7           I do feel I have a responsibility to

8   make a determination as to whether there was enough

9   in the way of evidence that would possibly or

10  potentially give the bankruptcy court jurisdiction

11  over that theory.  I can't decide that without

12  hearing from the two witnesses that I have ordered

13  to appear.

14          Mr. Ingram, I will tell you, I feel for

15  you.  And I am reminded a little bit, I tell stories

16  from literature sometimes, I don't know why, but

17  there was the Uncle Remus story, Brer Rabbit.

18  Somebody decided to play a trick on somebody else,

19  and they took a wooden toy and smeared it with tar

20  and called it tar baby.  And whoever touched the tar

21  baby got stuck to it and couldn't let go.  Once in a

22  while a lawyer, unhappily, picks up a tar baby and

23  can't let go.  I think I need you here unless and

24  until another lawyer comes in.  But I am very

25  sensitive to the fact that you are reluctant to

13

1   expose yourself to support of a pleading that you

2   think it would be unprofessional to go forward on.

3   It seems to me that it's somewhat analogous to the

4   position of a defense attorney whose client wants to

5   get on the stand and tell a fairy story in a

6   criminal case.  I am not in any way suggesting Mr.

7   Hanno is in that position.  I am trying to give you

8   an analogy.  I hope Mr. Hanno understands that.

9        MR. HANNO:  I understand.

10       THE COURT:  And the way a lawyer solves that

11  is by saying, Judge, I would like to ask permission

12  from my client to testify in narration, which is a

13  signal to every one that he's got to put the witness

14  on the stand, but he doesn't want to be held

15  responsible for what the witness testifies to.  It

16  seems to me that you could, with some measure of

17  comfort at least from my view, put the witnesses in

18  the courtroom and allow others to interrogate the

19  witnesses if you felt uncomfortable in doing so.  If

20  you felt that might suggest that you are prosecuting

21  a position that you could not professionally

22  endorse, and you wish to send a signal that you hope

23  that common sense would protect you from any 9011

24  sanctions.

25            So given that analysis, number one, I

14

1   don't think I ought to pass on the pending motion to

2   dismiss for lack of jurisdiction because I don't

3   think without that record I can really decide

4   whether I have jurisdiction.   I really think I agree

5   with the law set forth in that motion, except that

6   for the possibility which apparently is very slim,

7   if perhaps even nonexistent, that they could show a

8   predismissal act amounting to a tort under Illinois

9   law gave rise to a predismissal cause of action

10  owned by the estate for which I would have related

11  jurisdiction.

12          So I don't think I can decide that

13  based just on the motion.   That's the reason why my

14  inclination is to continue the motion to dismiss,

15  which is just -- dismiss the adversary complaint.

16  And then on the motion to strike the rule 9024

17  request, it again relates to jurisdiction and the

18  RUCKER FELDMAN Doctrine.   And of course there are

19  other issues it raises, like whether or not the

20  evidence was discoverable before dismissal, and some

21  other things as well.   It seems to me that I've made

22  it clear that I've not set a full trial on the

23  adversary or the motion, but I am merely setting a

24  partial trial.   The purpose of the partial trial, I

25  underline, was to determine whether I have possible

15

1    jurisdiction.  If I don't have possible

2    jurisdiction, there's not going to be a full trial.

3    And I will dismiss everything, and I will re-close

4    the bankruptcy.

5           If I do have possible jurisdiction,

6    then I have to give people time to get ready to deal

7    with it.  So for that reason I think that the motion

8    to strike the Rule 9024 request should also be

9    continued.  And finally the motion to vacate

10   pretrial order, I am inclined not to grant it for

11   all the reasons I indicated.  I think that a record

12   should be developed as to whether or not I have

13   potential jurisdiction.

14          Now, I gave you all this talk so that I

15   can allow you folks to think about what I have said.

16   If you would like a recess to reflect on it, I will

17   come back in ten minutes and we'll talk further and

18   I'll hear your views.  Once in a while -- now these

19   are my inclinations, folks.  And I understand that I

20   have not heard any oral discussion from you, but I

21   thought I would lay out some thinking for a little

22   bit and then hear you.  And I won't -- I am not

23   ready to rule until I have heard you.  Once in a

24   while it's easier for lawyers, I think, to find out

25   what a judge has on the judge's mind before the

16

1    lawyer argues.  I appreciate it runs the risk of a

2    lawyer saying, well, if the son-of-a-gun's already

3    made up his mind, that's unfair.  On the other hand,

4    in my view in this circumstance, I think it's fair

5    for you to argue after you hear some of the thoughts

6    that I have just articulated than simply arguing

7    blind and then having me rule at the end without

8    your feeling or concerns I've just expressed.

9              Do you want a recess, Mr. Ingram, of

10   ten minutes?

11        MR. INGRAM:  Yes, Your Honor, I appreciate

12   the opportunity.

13        THE COURT:  All right.

14              Counsel, would ten minutes be enough?

15        MR. WYSOCKI:  That would be fine, Your

16   Honor.

17        THE COURT:  Okay.  I will see you folks at

18   10:15.

19        MR. INGRAM:  Thank you, Judge.

20                   (Brief recess.)

21        THE CLERK:  Recalling John Hanno, 98 B

22   36360, Hanno versus TCF National Bank, 00 A 00527.

23        THE COURT:  Mr. Ingram, I will hear you on

24   your motion to withdraw.

25        MR. INGRAM:  Your Honor, first, I appreciate

17

1   very much the sensitivity that you have shown to the

2   delicate position that we are in fact in.   I

3   understand that the court has a need for going

4   forward with getting the information necessary to

5   make your own determination as to whether you have

6   jurisdiction in this case.  I do indeed feel in a

7   bind, and it's very difficult to figure out exactly

8   how to do this.  But there are two other things I

9   would like to bring to the Court's attention, that's

10  besides the testimony of two persons who we were

11  originally intending to bring.  And those two

12  persons will be brought in.   There's also documents

13  that are being presented by the bank at the moment

14  that we were reviewing.  And there's other documents

15  which have not yet been presented that we need to

16  review. It is quite -- it is possible, although I

17  will not say that we have at this moment made a

18  determination if there is such a document, that

19  other evidence in the documentation beyond the

20  evidence that might have been presented by these two

21  persons that might indicate the existence of a

22  tort prior to the December 1st hearing.

23          Secondly, Mr. Hanno, himself, has

24  indicated that if there was a possibility we were

25  going to put on testimony by narration, if it would

18

1   be possible to have not only those persons but also

2   Mr. Hanno testify at that hearing, that he might be

3   able to provide some of the information that was

4   missing, and that would give an indication of the

5   existence of that predismissal tort.

6        And in our original motion what we

7   asked was that the trial date be reset and that we

8   be allowed to withdraw; that he be given 21 days in

9   which to file the appearance of a new counsel.  It

10  would not seem to me to be contrary to the court's

11  own need to determine jurisdiction and our need to

12  continue to review the documents and to achieve --

13  there's supposed to still be a number of documents

14  coming from Minnesota.  There's about 500 privileged

15  documents that have been listed in documents on

16  microfilm that need to be examined.  In order to

17  have that discovery completed, if we were able to

18  also have an order compelling the immediate

19  production of those documents, we would be able to

20  tell further whether or not when we, if we were

21  exercising our professional judgment at such a

22  hearing, whether or not those documents, taken

23  together with the testimonies that I have just

24  indicated, would be sufficient to provide the

25  evidence that Your Honor needs in order to establish

19

1  jurisdiction based upon a predismissal tort.

2           So the long and the short of it is,

3  Your Honor, there are two ways that I see that we

4  can go.  Our preference would be to have the order

5  entered allowing us to withdraw, giving Mr. Hanno 21

6  days, resetting the trial date so that he would have

7  an opportunity to bring an attorney up to snuff,

8  have an opportunity to review the remaining

9  documents that have not come in.  However, if we are

10  -- if that is not in the cards and Your Honor,

11  having sensitively analyzed this matter, has brought

12  out in your recital earlier today our attempt at

13  least to be acting in a completely and totally

14  ethical way before the court, that we would under

15  that understanding be willing to go forward with the

16  presentation of information before the court upon

17  which the court may decide whether or not it has the

18  jurisdiction.  We would ask that those other things,

19  the compelling of the documents, and looking to Mr.

20  Hanno to testify, would be added to the pretrial

21  order.

22           THE COURT:  Well, in the pretrial order I

23  have a provision that only Jensen and Grieff will be

24  allowed to offer testimony.

25           MR. INGRAM:  That's correct.

20

1          THE COURT:   That TCF was required to   produce

2     Jensen and you were required to assure Grieff's

3     appearance.   And I also said that based on the

4     testimony by those two, I will determine whether or

5     not to allow additional evidence.   And should any

6     additional witnesses be discovered prior to trial,

7     the party seeking to call the witness will provide

8     notice to the opposing party and seek leave of court

9     to present that witness, that additional witness.

10    You have to make a motion here.   No one's made such

11    a motion.

12          It's one thing to suspect that if you

13    had enough time to rummage around, you could find

14    out that something wrong happened sometime.   It's

15    quite another thing to say to me, reopen the case

16    because we have evidence that something happened

17    before you dismissed the case.

18          Have you found anything by way of

19    concrete evidence that tends to show that something

20    happened before I dismissed the case?

21          MR. INGRAM:   We have evidence that tends to

22    show that, but nailing it down is another question.

23    There are, for instance, appraisals that show a much

24    higher appraisal of the property than that which was

25    testified to by the bank in court.

21

1          THE COURT:   What difference does that make?

2          MR. INGRAM:   Because then, in order to pay

3     that loan off, they would need a lesser amount of

4     money.   There's also --

5          THE COURT:   That goes to the question of the

6     legitimacy of the payoff?

7          MR. INGRAM:   Legitimacy of the payoff and how

8     much was paid, and the fact that it was being

9     withheld and constantly changed.

10         THE COURT:   Now remember what I said about

11    the payoff.   You had, and your client had, with the

12    aid of counsel, ample opportunity to come before me

13    before the case was dismissed and get a payoff

14    letter and to contest their payoff letter.   And that

15    never happened.

16         MR. INGRAM:   If we find out that there was a

17    fraudulent presentation of the payoff letter, that

18    that might be something -- and that it was done --

19         MR. INGRAM:   -- the full amount --

20              (Simultaneous colloquy.)

21         THE COURT:   You have not alleged that.

22         MR. INGRAM:   We're just getting the documents

23    now and just going through them, Your Honor.   So we

24    haven't had the opportunity.

25         THE COURT:   It's one thing to present a

22

1   potential cause of action, it's another to say "keep

2   my potential cause of action alive because some day

3   something may turn up."  There's another, I hate to

4   give you the literature analogies, but there is, I

5   think, Mr. Micawber in David Cooperfield who kept

6   saying something will turn up.  For lawyers to

7   proceed on that basis, I call it the Micawber

8   approach.  I'm not so sure I ought to keep things

9   alive on the basis of a hope that something may turn

10  up.  And you have not made a motion to add to the

11  witness list for Mr. Hanno or anybody else.  I

12  strongly suspect that if he knows anything from his

13  personal knowledge that occurred prior to dismissal,

14  it was not something that he was unable to bring to

15  my attention before the case was dismissed.  In

16  other words, he either knows something he hears or

17  hears or surmises from third-party sources, or if he

18  has admissible testimony, it's something he knew

19  before the case was dismissed.  My guess is so.  But

20  in any event, you have not made a motion to add him

21  to the list.

22           Anything else you want to say?

23       MR. INGRAM:  I think that's it.  Basically we

24  would like to have the opportunity to continue the

25  trial date to give him an opportunity to get new

23

1    counsel and to develop these matters.

2             Thank you, Your Honor.

3        THE COURT:  Let me hear your reaction to his

4    motion to withdraw.

5        MR. WYSOCKI:  Your Honor, with respect to the

6    motion to withdraw, our position, frankly, is that

7    somebody has to be responsible for the pleadings

8    that have been filed in this case.  Rule 9011 does

9    not allow an attorney to file a pleading and then

10   hope that two months later they might discover

11   evidence to back up what's alleged in that

12   pleading.  These pleadings are filed.  They contain

13   statements of material fact which were not true.

14   Those statements were that Mr. Grieff talked to Mr.

15   Jensen before December 1st.  That's simply not true.

16   There's no investigation when these pleadings were

17   filed to determine whether or not that was true.  If

18   Mr. Grieff is called to testify, he will testify

19   that he was never asked when that conversation took

20   place.  I don't think it's appropriate for -- I

21   understand the difficult position counsel's in here,

22   but I want the court to understand the position that

23   my client is in.  There are pleadings that are filed

24   in early June.  The facts in those pleadings are not

25   true.  Two months later the facts still are not

24

1   true.   There's nothing else pleaded; there's nothing

2   else alleged.   Somebody has got to be responsible

3   for filing those pleadings with this court.

4        THE COURT:   And what is the answer to my

5   question?   What is your position on his motion to

6   withdraw?

7        MR. WYSOCKI:   Judge, I think we would be

8   prejudiced if he is allowed to withdraw.   I think it

9   would take at least three to four weeks for any new

10   attorney to come on this file and be familiar with

11   the thousands of documents we have produced in the

12   years of litigation.

13        THE COURT:   That means you want to go to

14   hearing on the set date.

15        MR. WYSOCKI:   Your Honor, I will argue later

16   when you address our motions to dismiss why I don't

17   think we should go to hearing.   But I do believe

18   that if Your Honor does believe that we should go to

19   hearing, it should be with counsel that is of record

20   right now.

21        THE COURT:   Well, let's talk about that.

22   Have you finished your remarks on his motion?

23        MR. WYSOCKI:   Yes, Your Honor.

24        THE COURT:   On your motion now, you have

25   several motions, as I alluded to earlier, are you

25

1   arguing that I should reset the trial, or do you

2   want me to vacate the pretrial order?

3        MR. WYSOCKI:  Yes, Your Honor, that is one of

4   the motions we filed.

5        THE COURT:  Is that because you feel I have

6   no jurisdiction?

7        MR. WYSOCKI:  Correct, Your Honor.  But it's

8   also because we feel that the two pending motions to

9   dismiss can be decided without hearing testimony

10  from Mr. Grieff and Mr. Jensen for a couple of

11  reasons.  First of all with respect to Mr. Grieff's

12  testimony in two affidavits, first of all the first

13  affidavit on its face does not state that any bad

14  acts took place before December 1st.  Now that may

15  be ambiguous, but it does allege that.

16        THE COURT:  Can you tell me where I will find

17  that affidavit, please?

18             Ah, Exhibit A to the motion for 9024

19  relief.  Except, unhappily, there's no Exhibit A

20  attached to my copy.

21             Does anybody have a copy of that?

22             Ah, here we are go, affidavit of Steve

23  Grieff.  The affidavit says between April 1, '99,

24  and December 1, '99, he was approached by Hanno, and

25  Christina Reitz, R-e-i-t-z, for a mortgage on the

26

1   property at Six North Trial.  That, of course, was a

2   period -- the bankruptcy case, December 2.  And then

3   in order to finance the property I needed a payoff

4   letter from TCF Bank.  And paragraph five, quote:

5   "I called Brian Jensen who normally would provide

6   payoff letters for TCF Bank," end of quote, et

7   cetera.

8           Now the date -- when I read this

9   paragraph five, I wrote the word when.  In other

10  words, when did he call Brian Jensen.  I wrote that

11  down as a little memo to myself.  On the other hand

12  it at least is something of -- an inference could

13  reasonably be made by someone who did not draft the

14  affidavit -- well, I don't know who drafted the

15  affidavit.

16          Who drafted the affidavit, counsel?

17          MR. INGRAM:  I believe Miss Boynton did, Your

18  Honor.  And I --

19          THE COURT:  From your office?

20          MR. INGRAM:  Yes.  And I have talked to her

21  extensively after she talked to him on the

22  telephone.  Then she faxed it to him.  She talked to

23  him and said, "is everything in here accurate."

24          THE COURT:  Well, in any event, the affidavit

25  at least is ambiguous as to when the conversation

27

1    took place.  It could be read that it took place

2    within the period before December 1st, or it could

3    be read to read that it wasn't specified when the

4    conversation took place.  That's why I felt there

5    was an ambiguity.  It could be read either of those

6    two ways.

7              Go ahead with your argument.

8         MR. WYSOCKI:  Your Honor, to the extent

9    there's a defect in that affidavit, I think it's the

10   burden of Mr. Hanno to properly plead his case and

11   properly plead when that happened.  But, Your Honor,

12   there's a reason why our motion to dismiss the

13   adversary complaint was styled as a 12(b)(1) and a

14   12(b)(6).  That is because we could attach an

15   affidavit if it's a 12(b)(1), which we did.  And we

16   did attach, and it is part of the record, the second

17   affidavit from Steve Grieff.  That's attached as

18   Exhibit G to both of our pending motions to

19   dismiss.

20        THE COURT:  Attached on 12(b)(1)?

21        MR. WYSOCKI:   Yes, Your Honor.

22        THE COURT:  Is that like a motion for summary

23   judgment?

24        MR. WYSOCKI:  I think it could be acted on in

25   that manner, Your Honor.

1          Your Honor, if you will look at the

2    second declaration of Mr. Grieff, it's Exhibit G, it

3    says although he cannot be certain --

4          THE COURT:  G to what?

5          MR. WYSOCKI:  Exhibit G to our motion to

6    dismiss the adversary complaint.

7          THE COURT:  Okay.  How am I going to find

8    it?

9          Here it is.  I have it.  I cannot be

10   certain of the exact date, but it was after Feb. 7

11   year 2000.  Okay.

12         MR. WYSOCKI:  Your Honor, so that evidence is

13   in the record.  We also have the evidence of Mr.

14   Brian Jensen, his affidavit which is Exhibit H to

15   that same motion.  Mr. Jensen in that affidavit --

16         THE COURT:  Which exhibit is that?

17         MR. WYSOCKI:  Exhibit H, right after the

18   exhibit you just looked at.

19         THE COURT:  Well, I understand.

20         Is this a motion for summary judgment

21   where I have to treat this under summary judgment

22   procedures?

23         MR. WYSOCKI:  I don't believe you have to,

24   Your Honor.  I believe it's a combined 12(b)(1) and

25   12(b)(6).  And the reason we did that was, of

29

1    course, to get this affidavit before the court.   I

2    think it's appropriate.   I can't cite you a case

3    because I didn't believe this would be up today.   I

4    believe it's appropriate on 12(b)(1) for the court

5    to determine jurisdiction based on affidavits.   We

6    have two affidavits which on their face clearly set

7    forth facts on which there's no jurisdiction in this

8    court.   There are no opposing affidavits.   There's

9    no contrary evidence in the record based on those

10   two affidavits.

11        THE COURT:   If I were to treat this under

12   summary judgment procedures, of course I have to

13   give them time to respond to summary judgment

14   procedures and go through the summary judgment

15   procedures.

16        MR. WYSOCKI:   Well, they of course have

17   time.

18        THE COURT:   Which is, it seems to me, a

19   rather complex way of substituting for action just

20   having the witnesses take the stand and tell me

21   something in plain English.   But, go ahead.

22        MR. WYSOCKI:   Your Honor, they of course

23   would have time to respond to the 12(b) motions and

24   file a written response without causing TCF to incur

25   the cost of preparing for trial.

30

1      THE COURT:  What is the problem in preparing

2  for trial?  In other words, what do you have to do

3  to prepare for trial other than getting a witness

4  here to say what he's told me in the affidavit.

5      MR. WYSOCKI:  We have to draft findings of

6  fact, conclusions of law.  We have to --

7      THE COURT:  I will excuse that.

8      MR. WYSOCKI:  Well, Your Honor --

9      THE COURT:  I'll simplify it.

10      MR. WYSOCKI:  Well, Your Honor, if we're

11  going to go to trial, we would like to submit those

12  findings of fact so we have them on the record.

13      THE COURT:  Why?

14      MR. WYSOCKI:  Because if Your Honor's going

15  to take the court's time and our time to have

16  witnesses, live testimony, then I want that

17  testimony to be incorporated into whatever your

18  court's opinion will be.

19          Your Honor, there are several other

20  things that we bring up in the --

21      THE COURT:  Do you think the evidence is

22  going to show he's got a dry hole, as they say in

23  the oil fields?

24      MR. WYSOCKI:  If I understand the correct

25  interpretation of the term dry hole, I think yes.

31

1      THE COURT:  And do you think it would take

2  more than 20, 30 minutes of testimony by each of

3  these men to show me that?

4      MR.  WYSOCKI:  I think it would probably take

5  one minute of testimony by Mr. Grieff.

6      THE COURT:  What's the complexity?

7      MR. WYSOCKI:  Your Honor, I think it's --

8      THE COURT:  There's testimony plus

9  cross-examination, and I don't know whether or not

10  there's a scintilla of evidence that might support

11  my jurisdiction.

12      MR. WYSOCKI:  Your Honor, I think the

13  question is that that scintilla of evidence has not

14  been presented yet.

15      THE COURT:  No, it hadn't.  That's why I said

16  it here.

17      MR. WYSOCKI:  Your Honor, in our two separate

18  motions for dismissal we also talk about other

19  grounds on which this court doesn't have

20  jurisdiction.

21      THE COURT:  Go ahead.

22      MR. WYSOCKI:  And those grounds don't depend

23  on any testimony that would be offered by Mr. Grieff

24  or Mr. Jensen.  For example, with respect to the

25  rule 9024 motion and the Rooker Feldman arguments, I

32

1   don't believe --

2          THE COURT:  You're right on Rooker-Feldman.

3   I cannot upset the judgments of the state court.

4          MR. WYSOCKI:  Correct, Your Honor.

5          MR. WYSOCKI:  What about the 9024 matter?

6          MR. WYSOCKI:  Well, to the extent that the

7   only relief asked by the 9024 motion is something

8   that's barred by the Rooker-Feldman doctrine, there

9   is no testimony that Mr. Grieff or Mr. Jensen can

10  give that would abate the Rooker-Feldman doctrine.

11  Therefore, I think that there's no reason why that

12  motion should be continued until this hearing.

13         THE COURT:  I need to take that up.

14             The motion under 9024 asked me to

15  vacate the order of dismissal, among other things.

16  I think the other things -- plus the money judgment.

17  I made the point earlier -- well, I think --

18  everything to reverse the judgment of the state

19  court is barred by the Rooker-Feldman doctrine.

20  They also seek vacation of the order of dismissal.

21  In other words, a reopening of the case.  And if

22  they could, if they could demonstrate that an event

23  predismissal gave rise to a potential claim under

24  Illinois law, over which I would have jurisdiction,

25  related jurisdiction to the extent they seek money

33

1  damages, would that be within my jurisdiction?

2       MR. WYSOCKI:  No, Your Honor, because they

3  have not shown why they could not obtain that

4  information within 10 days, within 10 days of the

5  dismissal.  Now that's an important fact, because

6  even if Mr. Grieff would testify to what they claim

7  in their motions, they had a letter from Mr. Grieff

8  on May 22nd of this year.  They were talking with

9  Mr. Grieff on May 22nd.  This 9024 motion was filed

10  more than 10 days after May 22nd.  They still have

11  to comply with what essentially is rule 60(b),

12  incorporated by 9024.

13       THE COURT:  60(b)?  Remember, their shot is

14  not at what happened in May of the year 2000, but

15  what happened on December 2 of the year 1999.

16       MR. WYSOCKI:  Correct, Your Honor.

17       THE COURT:  What difference does it make if

18  they talked to the fellow in May of 2000?

19       MR. WYSOCKI:  They have to be able to show

20  that they, whatever evidence they had to support

21  their theory was brought to the court within 10

22  days.

23       THE COURT:  Under what rule?

24       MR. WYSOCKI:  Under rule 60(b), incorporated

25  by rule 9024.

34

1      THE COURT:  I don't understand you.  I don't

2  understand you.  A motion shall be made within a

3  reasonable time and not --  they're under 60(b)(2),

4  newly discovered evidence.  And they may have a year

5  after judgment in order to do that.  They came in

6  within the year.  I don't know what you mean by 10

7  days.

8      Oh, you were talking about the ordinary

9  rule 60(b) motion.  They have to file it within 10

10  days or else -- no, that's rule 59 they have to file

11  within 10 days.  You're a little mixed-up, counsel.

12  Rule 59 they have to file within 10 days.  Rule 60

13  has its own time limits.  And here they have a year

14  after the judgment.  The judgment was December 2.

15  They're in here within a year of that.

16      Rule 60(b)(2), I don't know if they

17  have any such evidence, but that's what they're here

18  under.

19      MR. WYSOCKI:  I believe that what they're

20  claiming is the same thing that they claimed when

21  this was pending, it's all about the payoff letter.

22      THE COURT:  To the extent they complain about

23  things that obviously they could have gotten redress

24  about here, this is not an appropriate newly

25  discovered evidence issue.  And to that extent I

35

1   suspect there's a lot to your objection.  But try to

2   focus on what I see as the potential at least for

3   jurisdiction, newly discovered evidence of a

4   potential interference with commercial expectancy

5   prior to dismissal.

6        MR. WYSOCKI:  Your Honor, there's one other

7   issue.  In our briefs we cite the in re:  Xonics

8   case.  And I think that the court will agree at this

9   point since the sale transaction -- foreclosure sale

10  of the property has been confirmed, Mr. Hanno has no

11  rights in the property, and there's no property in

12  the estate in this case.

13       THE COURT:  Counsel, you're right about

14  everything related to real estate.  That's another

15  point on real estate.  You are right.  I am quite

16  sure you are right.  I haven't heard the answer from

17  your opponent, but I am quite sure you're right.  I

18  am only zeroing in on the potential for money damage

19  claim which they didn't know they had, which they

20  now claim they just learned about, if they can show

21  me evidence that they indeed obtained such

22  evidence.

23       MR. WYSOCKI:  Yes, Your Honor, but they have

24  to have some grounds for bankruptcy jurisdiction.

25  In the Xonics --

36

1      THE COURT:  Some what?

2      MR. WYSOCKI:  Some grounds for bankruptcy

3  jurisdiction.

4      THE COURT:  Let's assume arguendo a day

5  before I dismissed they found out that your client

6  had interfered with their authority to refinance.

7  Let's assume that for the sake of discussion.  Would

8  they have a money damage cause of action against

9  your client?

10     MR. WYSOCKI:  Yes, because the bankruptcy

11  case was still pending.

12     THE COURT:  I know.  I have jurisdiction to

13  reopen a bankruptcy case to afford relief.  If they

14  have the horses, and counsel, Mr. Ingram's office,

15  has expressed some doubt as to whether they do, but

16  if they did have it, it seems to me I could -- I

17  have reopened the case to entertain the possibility

18  that he could demonstrate that he has the evidence.

19          Anything else, counsel?

20     MR. WYSOCKI:  That's my argument, Your

21  Honor.

22     THE COURT:  Anything else you want to say,

23  Mr. Ingram?

24     MR. INGRAM:  Yes, with respect only to the

25  affidavit of Mr. Jensen, which was Exhibit H.  He

37

1   states in his affidavit, "I have never told Mr.

2   Grieff that TCF would not issue a payoff letter."

3   In part of the documents that you have is indeed the

4   letter that Mr. --

5                I'm sorry.  How do you pronounce your

6   name?

7           MR. WYSOCKI:  Wysocki.

8           MR. INGRAM:  Mr. Wysocki has cited in which

9   Mr. Grieff has written to Mr. and Mrs. Hanno, John

10   Hanno and Christine, indicating that he spoke with

11   Brian Jensen and he said that they would not be

12   issuing a payoff until you dropped your lawsuit with

13   them.  He also stated that you had previously

14   attempted to refinance using Christine's credit.  He

15   said that they considered her your common-law wife

16   and would not allow a transaction involving her to

17   take place.

18           THE COURT:  What's your point?

19           MR. INGRAM:  The point is that he was

20   suggesting there could be summary judgment based

21   upon an affidavit in which there's a clear

22   contradiction in the record.  And he indicated there

23   was no such contradiction in the record.  So there's

24   no grounds for summary judgment based upon Mr.

25   Jensen's testimony, since it is subject to being

38

1   examined and scrutinized for its veracity.

2          MR. WYSOCKI:  Judge, as you may recall, the

3   issue of the payoff letter is not at issue in this

4   case, and Your Honor has said that a number of

5   times.

6          MR. INGRAM:  The question is the refusal to

7   issue the payoff letter until it was too late to do

8   so.

9          THE COURT:  Well, counsel --

10          MR. WYSOCKI:  Your Honor, we gave them a

11   payoff letter before the bankruptcy was dismissed.

12   And if counsel represents otherwise, that's false.

13          THE COURT:  Counsel, no one came here before

14   dismissal to get relief of the court to get a payoff

15   letter.  And that was the time -- I mean, if they

16   had not received an adequate payoff letter, or if

17   they received one that they didn't believe was

18   accurate, they knew that before I dismissed.

19   There's no after-acquired information on which a

20   claim could now be made that they didn't know they

21   had a payoff letter, or an adequate payoff letter

22   predismissal.

23          No, we're still on a very narrow

24   issue.  Did the bank or not, is there evidence or

25   not that shows the bank interfered with a commercial

39

1    expectancy of a refinancing.  All right.

2              One more question, counsel, Mr. Ingram,

3    was it you that suggested I should ask Judge Bucklo

4    for some sort of an order to allow me to go forward

5    with the hearing?  Was that your suggestion

6    originally?

7         MR. INGRAM:  Not myself personally.  It may

8    well have been from Miss Boynton.

9         THE COURT:  What sort of an order did you

10   have in mind, or did your office have in mind?

11        MR. INGRAM:  I believe a request that should

12   there be a -- there be a remand to the --

13        THE COURT:  A remand of what?

14        MR. INGRAM:  Of the hearing on a particular

15   issue as to whether or not --

16        THE COURT:  In other words, a narrowing

17   remand.

18        MR. INGRAM:  Yes.

19        THE COURT:  An authorization of some sort to

20   hold a particular narrowing hearing we're talking

21   about.

22        MR. INGRAM:  That's correct, Your Honor.

23        THE COURT:  Not remanding the whole appeal.

24        MR. INGRAM:  That is correct, Your Honor.

25        THE COURT:  But leaving the basic appeal

40

1   before Judge Bucklo; is that the idea?

2        MR. INGRAM:  And raising the issue that you

3   yourself raised today as to whether or not that was

4   a different issue than that which was on appeal, and

5   therefore thus getting her okay that to -- to

6   support your own analysis of today.

7        MR. WYSOCKI:  Judge, I think that's not

8   necessary if you look at Judge Bucklo's order which,

9   although the copy is not great, we have attached it

10  as Exhibit F to our motion to dismiss the adversary

11  complaint.

12       THE COURT:  Let me have a look at it.

13       MR. WYSOCKI:  And I apologize, the copy is

14  sort of cut off a little bit on the side.

15       THE COURT:  Okay, I've got it here.  There's

16  no case -- I assume -- oh, this must be the back of

17  one of those orders.

18       MR. WYSOCKI:  Correct, Your Honor.  Near the

19  bottom in the last paragraph where it begins,

20  accordingly, Judge Bucklo states:

21              "Accordingly, I will stay the present

22               appeal pending the bankruptcy judge's

23               consideration of the rule 9024

24               motion.  If the bankruptcy judge

25               concludes that he would be likely to

41

1          grant relief --"

2      THE COURT:  If the bankruptcy judge

3  concludes, then she will remand.

4      MR. WYSOCKI:  Correct.

5      THE COURT:  Okay.

6          I am going to hold a hearing to

7  determine whether I am likely to grant relief that

8  requires a remand.  That's your point?

9      MR. WYSOCKI:  Yes, Your Honor.

10     THE COURT:  Okay.  Let's talk about how we're

11 going to deal with this.  I have set this trial for

12 what date?

13     MR. INGRAM:  August 21.

14     THE COURT:  The bank's motion, TCF Bank's

15 motion to dismiss adversary is set for August 21 at

16 what time?

17     THE CLERK:  2:00 o'clock.

18     THE COURT:  2:00 p.m., which I will take

19 along with the hearing, motion to vacate -- motion

20 to strike debtor's -- TCF Bank's motion to strike

21 debtor's rule -- request for relief.  Also set

22 August 21, 2:00 p.m., motion to vacate pretrial

23 order -- TCF Bank's motion to vacate pretrial order,

24 and to set briefing schedules on its motions is

25 denied for reasons stated; however, parties are

42

1    excused from the requirement of filing proposed

2    findings of fact and conclusions of law.

3             That means to me, counsel, if you do

4    want file it, you are obviously welcome to file it.

5    But if you don't have it, then you can argue

6    orally.

7             And, Mr. Ingram, your motion to

8    withdraw as counsel is set for August 21 at 2:00

9    p.m.  The trial will go on.

10            MR. WYSOCKI:  Judge, I have one housekeeping

11   matter.  In the pretrial order we had been ordered

12   to provide some final documents by August 4th.

13   Since both parties wanted to vacate that pretrial

14   schedule, we haven't provided them.  We'll provide

15   them on Monday.  I just want to make sure that we're

16   not considered to be in violation of any order of

17   the court.

18            THE COURT:  Any documents -- what are these

19   things anyway?

20            MR. WYSOCKI:  These are the documents from

21   the Minnesota general counsel of TCF National Bank.

22            THE COURT:  Oh, yes.  Counsel, provide them

23   as soon as you can, and we'll find out what Mr.

24   Ingram says after he sees them.

25            MR. INGRAM:  April 14th?

43

1          THE COURT:  It may or may not be of any

2     importance.  We don't know yet.

3          MR. WYSOCKI:  Not April.

4          THE COURT:  Have you seen them, counsel?

5     Have you seen them?

6          MR. WYSOCKI:  Me, Your Honor?

7          THE COURT:  Yes.

8          MR. WYSOCKI:  Yes, I have seen them.  I have

9     not reviewed them yet.

10         THE COURT:  Okay.  So you are going to get

11    them to counsel by when?

12         MR. WYSOCKI:  Monday, this Monday.

13         THE COURT:  August 14th.

14         MR. WYSOCKI:  August 14th.

15         THE COURT:  You have given him a log of

16    privilege claims?

17         MR. WYSOCKI:  That's correct, Your Honor.

18    Your Honor had already set a date for them to come

19    back in on that document and they didn't raise any

20    objections.

21         THE COURT:  All right.  We'll see what

22    happens.

23         MR. INGRAM:  Is that day yet to come.

24         MR. WYSOCKI:  No, it has passed.

25         MR. INGRAM:  Your Honor, could we have an

44

1    extension on that for the same reason that they have

2    an extension on those documents and perhaps by way

3    of --

4         THE COURT:  Are you going to raise any

5    questions about their log?

6         MR. INGRAM:  They have 500 privileged

7    documents, I believe, Your Honor.

8         THE COURT:  Instead of my extending your

9    time, why don't you come in and ask leave at some

10   point if you have any.  I mean, you might look at it

11   and say, "well, that's right.  They're apparently

12   right.  Why should I fight about it."  If you want

13   to fight about something, you ought to pick out what

14   you want to fight about and come in immediately.

15   And, of course, discuss with counsel before you come

16   here.  Okay?

17        MR. INGRAM:  Fine, Your Honor.

18        THE COURT:  I don't think it's appropriate

19   for me to change any schedules unless you folks come

20   in with particular requests.

21              Good morning.

22

23

24              (Which were all the proceedings had in the
               above-entitled cause, August 11, 2000.)

25   I, JACKLEEN DE FINI, C.S.R., R.P.R., DO
     HEREBY CERTIFY THE FOREGOING IS A TRUE AND

45

1    ACCURATE TRANSCRIPT OF PROCEEDINGS HAD IN
     THE ABOVE-ENTITLED CAUSE.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25