NOV 03

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JOHN A. HANNO, | ) | Bankruptcy No. 98 B 36360 |
|     Debtor. | ) | |
| _____ | ) | |
| | ) | |
| JOHN A. HANNO, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 00A 00527 |
| | ) | |
| TCF NATIONAL BANK ILLINOIS | ) | |
|     Defendant. | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Following consolidated evidence hearing held on John A. Hanno's ("Debtor" or "Hanno") Adversary Complaint (00-A-00527) for Injunctive Relief; his Emergency Motion for Injunctive Relief; his Emergency Motion Pursuant to Rule 9024 Fed.R.Bankr.P. to Vacate the Order Dismissing Bankruptcy; TCF National Bank Illinois' ("TCF") Motion to Strike Debtor's Rule 9024 Fed.R.Bankr.P. Request for Relief; and TCF's Motion to Dismiss this Adversary Complaint, the Court now makes and enters Findings of Fact and Conclusions of Law. Pursuant thereto, it is found that Hanno has not proven his claim that prior to dismissal on December 2, 1999 of Hanno's related bankruptcy case his mortgagee TCF interfered with Hanno's efforts to sell or refinance his primary residence. In fact TCF did not do so prior to that date. To the extent Hanno



seeks relief for alleged acts occurring after that date, this Court lacks jurisdiction over any such matters and no findings are made with respect thereto.

Accordingly, Hanno's motion for injunction and Rule 9024 motion to vacate the dismissal order are denied, and TCF's motion to dismiss this Adversary proceeding is granted, all by separate order.

## **FINDINGS OF FACT**

TCF National Bank Illinois ("TCF") was holder of the first mortgage on Debtor's principal residence located at 6 N. Trail, Lemont, Illinois (the "Property"). Hanno defaulted on his payments, and a Judgment of Foreclosure was entered by the Circuit Court of Cook County, Illinois on December 7, 1995.

Hanno then filed four successive bankruptcy petitions under Chapter 13 of the Bankruptcy Code. All failed. During the pendency of his fourth bankruptcy, Case No. 98 B 36360, on July 23, 1998, the automatic stay under 11 U.S.C. § 362 was modified to allow TCF to conduct the Sheriff's sale in the state court foreclosure case. The sale was held that day and TCF was the purchaser. Hanno then filed two more Chapter 13 bankruptcy petitions. His fifth case was dismissed. The sixth petition in Case No. 98 B 36360 was filed November 12, 1998.

After Hanno filed his sixth bankruptcy case, Hanno and TCF agreed to entry of the Agreed Order entered therein April 1, 1999. The Agreed Order provided, in pertinent part that in return for a large cash payment to TCF, Hanno would have eight months until December 2, 1999 to complete his sale or refinancing of the Property. The Agreed Order

2

further provided that TCF would furnish Hanno with a payoff letter on request. Paragraph 6 of the Agreed Order further stated that "TCF will set a motion to dismiss this case for December 2, 1999. If the sale of 6 N. Trail has not been concluded by that date, the Court will dismiss this case." In event of such dismissal, the Agreed Order further provided that Hanno would be enjoined from a further bankruptcy filing for 180 days.

The Property was not sold or refinanced by December 2, 1999. On December 2, 1999, U.S. Bankruptcy Judge Erwin Katz held a hearing in the absence of the undersigned. Pursuant to the Agreed Order, he dismissed the bankruptcy case and enjoined any new bankruptcy filing by Hanno for 180 days.

The Circuit Court of Cook County confirmed the foreclosure sale on December 9, 1999. On or about December 8, 1999, Hanno moved for reconsideration of Judge Katz's ruling and to vacate the dismissal of the current bankruptcy. A hearing on that motion was held, and on December 28, 1999, Hanno's motion was denied based on terms of the Agreed Order and Hanno's failure to refinance or sell by the agreed deadline.

On January 7, 2000, Hanno appealed the dismissal of his bankruptcy case to the U.S. District Court for the Northern District of Illinois, and the matter was assigned to Judge Bucklo.

On April 27, 2000, the Circuit Court of Cook County ordered the Cook County Sheriff to evict all persons residing at the Property. Hanno's attacks on and appeal from that order in state court were not availing. On June 6, Hanno filed the pending Emergency Motion for Injunctive Relief in this Adversary proceeding, and also an

3

Emergency Motion Pursuant to Fed.R.Bankr.P. 9024 (which incorporates Fed.R.Civ.P. 60(b)) to Vacate the Order Dismissing Bankruptcy in order to reinstate his bankruptcy case and use it to block or reverse the eviction.

The Emergency Motion stated that Christina Reitz ("Reitz"), Hanno's "housemate," had agreed to buy the Property from Hanno and had applied for financing from Fieldstone Mortgage. The Emergency Motion further alleged that Hanno had "recently discovered" that prior to the dismissal order of December 2, 1999, TCF had interfered directly and intentionally with Reitz's ability to obtain financing by refusing to give a payoff letter to Steve Greiff ("Greiff"), an employee of Fieldstone. That Motion seeks an order enjoining the eviction of Hanno.

Attached to Hanno's motion was the Affidavit of Steve Greiff (the "First Greiff Affidavit"). In that Affidavit, Greiff stated that "between April 1, 1999 and December 1, 1999, I was approached by [Hanno] and [Reitz] to provide a mortgage for [the Property]." The First Greiff Affidavit further states that Greiff had called Brian Jensen ("Jensen"), an officer of TCF, and that Jensen had allegedly told Greiff that TCF would not provide a payoff letter. Jensen's reason, the affidavit stated, was related to the litigation pending by Hanno against TCF and Jensen and because (said the affidavit) TCF considered Reitz to be the common law wife of Hanno. The First Greiff Affidavit did not state exactly when the conversation between Greiff and Jensen took place. However, Hanno's pleadings alleged that the conversation between Greiff and Jensen took place prior to the bankruptcy case dismissal order.

4

Hanno then filed this Adversary proceeding on June 7, 2000, wherein he seeks to have TCF enjoined from executing on its state court Order of Possession and from transferring or disposing of the Property. Later that day on June 7, Hanno filed an emergency motion before Judge Bucklo, making the same allegations and requesting that the eviction be enjoined. On June 8, a hearing on the latter motion was held before Judge Bucklo. Judge Bucklo denied Hanno's motion, because, according to her written opinion dated July 9, 2000, she found that Hanno had not made the required showing that he was likely to prevail on the merits. Judge Bucklo also stated that the Rooker-Feldman doctrine prevented her from staying the eviction. However, Judge Bucklo stayed the appeal process before her to allow a determination here as to whether this Court is likely to grant relief for any alleged violation of the Agreed Order of April 1, 1999.

On June 12, 2000, Hanno filed his Memorandum here in Support of Debtor's Rule 9024 Motion for relief he seeks that is assertedly based on newly discovered evidence. That Memorandum stated that Hanno was unable to learn of Greiff's conversation with Jensen earlier because Greiff had originally incorrectly told Reitz that the reason the loan could not be made to Reitz was because the loan program for which she had applied was no longer available. According to Hanno's Memorandum, neither he nor Reitz was told until after dismissal of his bankruptcy that the reason her application for a loan was denied was TCF's alleged refusal to give a payoff letter. The Memorandum again claimed that the conversation between Greiff and Jensen took place prior to dismissal of the bankruptcy case.

5

On June 19, TCF filed a Response to the Hanno motion that appended the Affidavit of Brian Jensen, an officer of TCF. In his Affidavit, Jensen stated that he did speak with Greiff, but that the earliest the conversation with Greiff took place was at 8:30 a.m. on March 10, 2000. On June 21, 2000, Hanno filed his Reply in Support of Motion for Relief under Rule 9024 Fed.R.Bankr.P. in which his counsel again stated that Greiff and Jensen conversed prior to bankruptcy case dismissal. Greiff later gave a second affidavit stating that his first conversation with Jensen took place sometime after February 7, 2000.

A limited evidence hearing was therefore set herein to decide whether any cause of action possibly arose in favor of Hanno before the bankruptcy case was dismissed, because if such had not occurred no pre-dismissal jurisdiction could lie here over any remaining issues. At the hearing, only Greiff and Jensen testified as to the date of their first conversation, and Hanno did not identify any other possible witness as to that conversation date.

During the hearing on August 21, 2000, Greiff testified that his first conversation with Jensen took place after February 7, 2000. He is certain of that date because he knows he discussed the appraisal of the Property with Jensen, and that appraisal was not completed until February 7, 2000. Greiff stated that neither Hanno nor Reitz nor any of Hanno's attorneys ever asked him when his conversation with Jensen took place.

Greiff also testified that John Hanno first approached him in November of 1999 in an effort to obtain a loan. The information sheet which loan officers fill out when a

customer first calls was dated November 11, 1999 for John Hanno. Hanno was turned down for that loan application because of his poor credit rating.

Jensen confirmed in his testimony that subsequently he did speak with Greiff, but that the earliest his conversation with Greiff took place was on March 10, 2000. Jensen testified that he is certain of that date because he made contemporaneous notes in his day planner. Greiff and Jensen disagree concerning the exact date when the conversation took place but both of their testimonies indicate that it was on some date after the bankruptcy case was dismissed. Therefore, Hanno's effort to prove interference by TCF with his loan application prior to dismissal of the bankruptcy utterly failed.

Hanno also attempted to raise the issue of TCF delivering an inaccurate payoff letter to Hanno or his attorney in November of 1999. However, assuming <u>arguendo</u> without deciding that the payoff letter was inaccurate, when it was delivered there was no loan application in existence. The initial loan application that Hanno filled out had already been rejected because of Hanno's poor credit rating. Moreover, under the Agreed Order, TCF was required to provide a payoff letter and to the extent anything in that response was deficient Hanno and his then counsel could and should have raised the issue before the bankruptcy dismissal. Finally, whatever payoff letter Hanno received prior to case dismissal can hardly be considered evidence not known by him until after that date so as to support an application under Rule 60(b)(2) Fed.R.Civ.P. [Rule 9024 Fed.R.Bankr.P.].

Additional fact findings are found as stated in the Conclusions of Law.

## CONCLUSIONS OF LAW

Hanno's pleading is not precisely pleaded, but the gist of it is this: After dismissal of his bankruptcy case, Hanno learned about a potential cause of action consisting of a tort under Illinois law of deliberate interference with a prospective economic advantage or prospective business expectancy, to wit, the expectation that Hanno would be able to fund the refinancing of his property before his bankruptcy case was dismissed and thereby save his home. Canel & Hale, Ltd. v. Tobin, 304 Ill.App.3d 906, 238 Ill.Dec. 64, 710 N.E.2d 861 (1st Dist. 1999); Labate v. Data Forms, Inc., 288 Ill.App.3d 738, 224 Ill.Dec.530, 682 N.E.2d 91 (1st Dist. 1997). Any such pre-dismissal cause of action would be property of the bankruptcy estate over which jurisdiction would lie in bankruptcy. Viewing the case in that context, the matter was set for a limited consolidated evidence hearing on all pending matters to determine whether the Court has jurisdiction by learning whether the conversation between Greiff and Jensen took place prior to dismissal on December 2, 1999, or whether it took place after that date so that any wrong that might be proved would not be within bankruptcy court jurisdiction.

## JURISDICTION

Section 1334 of title 28 U.S.C. vests in the district courts, "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a) and (b). While § 1334 sets forth jurisdiction of the district courts, 28 U.S.C. § 157(a) enables district courts to refer all such cases and proceedings to the bankruptcy judges for the district. 28 U.S.C. §157(a). The District

8

Court for the Northern District of Illinois has referred all bankruptcy cases under its jurisdiction to the bankruptcy judges pursuant to Internal Operating Procedure 15(a). Through that reference from the District Court, jurisdiction lies here over matters arising under, arising in, or related to bankruptcy cases under 28 U.S.C. § 1334.

Section 157 divides bankruptcy jurisdiction into two categories: core and non-core. Under 28 U.S.C. § 157(b)(1), "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." 28 U.S.C. § 157(b). Under 28 U.S.C. § 157(c)(1) a bankruptcy judge "may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11." However, in such non-core proceedings, proposed findings of fact and conclusions of law must be submitted to the District Court which has authority to enter the final order or judgment. 28 U.S.C. § 157(c).

Core matters are those "arising under" title 11 or "arising in" a case under title 11. 28 U.S.C. § 157(b). "Arising under" jurisdiction involves causes of action created or determined by a statutory provision of title 11. Barnett v. Stern, 909 F.2d 973, 981 (7th Cir.1990); Wood v. Wood (In re Wood), 825 F.2d 90, 96 (5th Cir.1987). Maitland v. Mitchell (In re Harris Pine Mills), 44 F.3d 1431, 1435 (9th Cir. 1995)cert. denied; 515 U.S. 1131 (1995). "Arising in" jurisdiction encompasses administrative matters that arise only in bankruptcy cases – matters not based on any right expressly created by title 11 but

9

without existence outside of bankruptcy. Diamond Mtg. Corp. of Illinois v. Sugar, 913 F.2d 1233, 1239 (7th Cir.1990); Wood, 825 F.2d at 97; In re Markos Gurnee Partnership, 182 B.R. 211, 220 (Bankr. N.D. Ill 1995), aff'd sub nom, State of Ill., Dept. of Revenue v. Schechter, 195 B.R. 380 (N.D. Ill. 1996).

Non-core matters over which bankruptcy courts have limited jurisdiction are those "related to" a bankruptcy case. A case is "related to" a bankruptcy when it affects either the amount of property in the bankruptcy estate or the distribution of that property among the creditors. In re FedPak Systems, Inc., 80 F.3d 207, 213-14 (7th Cir. 1996); Elscint, Inc. v. First Wisconsin Financial Corp. (In re Xonics, Inc.), 813 F.2d 127, 131 (7th Cir. 1987). Therefore, if any wrongful act by TCF against Hanno occurred prior to case dismissal that could bring recovery for benefit of creditors, "related jurisdiction" might lie to consider it. Rivera v. Proctor (In re Rivera), 186 B.R. 505, 506-07 (D. Kan. 1995); Berman v. Burke (In re Burke), 99 B.R. 431, 432 (Bankr. W.D. Mo. 1989); Fleet v. U.S. Consumer Council (In re Fleet), 53 B.R. 833, 838 (Bankr. E.D. Pa. 1985).

### THE GREIFF-JENSEN MEETING

The earliest that Greiff spoke with Jensen was after February 7, 2000, and if Jensen's testimony is credited, that conversation may have taken place as late as March 10, 2000.

Whether the first conversation between Greiff and Jensen took place on February 7, 2000 or on March 10, 2000, it definitely took place after dismissal of Hanno's sixth and last bankruptcy case. Accordingly, Hanno's assertion that TCF sought through that

conversation to interfere with Hanno's effort to refinance prior to dismissal on December 2, 1999, was not proved, had no merit, and simply was not true. As to any assertion that such interference came after that date, this Court lacks jurisdiction. Because there was no interference by TCF during the pendency of Hanno's bankruptcy case, he has no cause of action comprising property of the estate that arose during bankruptcy, nor any action created by or under Title 11 U.S.C. Similarly there is no related jurisdiction because there was no pre-dismissal cause of action under non-bankruptcy law that might have belonged to the bankruptcy estate. Thus, there is no possibility that this Adversary case would affect the amount of property in the bankruptcy estate or distribution of that property to creditors.

## ROOKER-FELDMAN DOCTRINE

The Rooker Feldman doctrine also bars Debtor from obtaining the relief he requests because TCF is now (and was when the pending matters were filed) the owner of the Property comprising Hanno's former home following foreclosure sale to it and state court confirmation of that sale. The "Rooker-Feldman" doctrine "precludes lower federal court jurisdiction over claims seeking review of state court judgments or over claims that are 'inextricably intertwined' with state court determinations." 4901 Corp. v. Town of Cicero, 220 F.3d 522, 527 (7th Cir. 2000). This doctrine's name is derived from two Supreme Court cases: Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)). The doctrine is based on recognition that the United

11

States Supreme Court is the only federal court having authority to exercise appellate review over state court decisions. Remer v. Burlington Area Sch. Dist., 205 F.3d 990, 996 (7th Cir.2000).

In order to determine if Rooker-Feldman applies, the essential question is "whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim." 4901 Corp, 220 F.3d at 527. In other words if the injury which the federal plaintiff alleges resulted from the state court judgment itself, then Rooker-Feldman controls, and the lower federal courts lack jurisdiction over the claim. Id. This is so even if the state court judgment is erroneous or even unconstitutional. Id.

Hanno's claim to have a pre-dismissal cause of action independent of the state court foreclosure confirmation was not proved, as earlier discussed.

Hanno's further pleading seeks to set aside the state court judgment confirming the foreclosure sale. In the Motion for Injunctive Relief and Motion for 9024 Relief, he seeks inter alia to have the bankruptcy court mandate that TCF sell its property to Debtor or enter a permanent injunction against TCF enjoining it from transferring or otherwise disposing of Debtor's primary residence. Hanno essentially was thereby seeking to undo the state court confirmation of sale by restoration to him of his divested title to the Property. Under Rooker-Feldman, authority does not lie here to do anything of the sort.

### FEDERAL RULE OF BANKRUPTCY PROCEDURE 9024

Fed.R.Bankr.P. 9024 adopts Fed.R.Civ.P. 60(b). Hanno seeks relief under Fed.R.Civ.P. 60(b)(2) which provides relief in the case of "newly discovered

12

evidence which by due diligence could not have been discovered in time to move for a new trial . . ."

No Rule 60(b)(2) relief can be granted here because there is no evidence, new or otherwise, that TCF bank interfered with Debtor's attempt to sale or refinance his property prior to dismissal of Debtor's bankruptcy case. Moreover, Hanno's complaints that the payoff letter received by him prior to dismissal was inaccurate can hardly meet the Rule 60(b)(2) requirement of newly discovered evidence.

## CONCLUSION

Hanno did not show that TCF interfered prior to dismissal of Hanno's bankruptcy to prevent Hanno from refinancing or selling his home, and therefore he has no pre-dismissal cause of action under non-bankruptcy law that might be property of the estate. Neither core nor related jurisdiction lies here for matters occurring after dismissal.

All of Hanno's motions are therefore denied, and the Adversary proceeding must be dismissed for lack of jurisdiction.

The related bankruptcy case was reopened to permit consideration of Hanno's pleadings seeking to reinstate his bankruptcy case and obtain other relief. No reason warrants that status any longer, and by separate order the related bankruptcy case will be re-closed. The dismissal order stands, and has not been affected by these proceedings.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Entered this 1st day of November, 2000.